

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/09/2010

| | | |
|---|---|---|
| IN RE: | § | Case No. 07-34780 |
| MARVIN EUGENE EZZELL; dba | § | Chapter 13 |
| HOUSTON AUTOMOTIVE CENTER, | § | |
| SADIE ANTOINETTE EZZELL, | § | |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION GRANTING MOTION TO DISBURSE AND DENYING MOTION TO MODIFY

For the reasons set forth below, the Court: (1) grants Debtors' Motion for Order Directing Disbursement of Funds on Hand by the Chapter 13 Trustee ("Motion to Disburse") (docket no. 224); and (2) denies the Motion to Modify filed by Houston Tire & Automotive Company ("Houston Tire") (docket no. 227).

### Background

On July 19, 2007, Marvin E. Ezzell and Sadie A. Ezzell ("Debtors") filed for chapter 13 relief. On August 9, 2007, Debtors filed their schedules and their proposed chapter 13 plan (docket nos. 15, 18). On Schedule B, Debtors listed an unliquidated, pre-petition malpractice cause of action against Twelve Oaks Medical Center and its unnamed doctors ("Twelve Oaks Medical Center"). Debtors did not claim any portion of the cause of action as exempt, and declared the value of the cause of action as unknown.

Debtors amended their proposed chapter 13 plan after creditors Fort Bend County, Frost National Bank, and the Internal Revenue Service objected to confirmation of the proposed chapter 13 plan (docket nos. 30, 31, 54, 55). At the November 14, 2007 confirmation hearing, the objecting creditors orally withdrew their objections and Debtor's proposed amended chapter 13 plan was confirmed ("the confirmed plan") (docket no. 59).

During the third year of their five-year chapter 13 plan, Debtors reached a $750,000.00 settlement agreement with Twelve Oaks Medical Center over their medical malpractice cause of action, for which they filed an Application to Compromise Controversy on October 18, 2009 (docket no. 162). No objections were filed to the Application to Compromise Controversy.

On November 10, 2009, the Court approved the compromise (docket no. 196) after a hearing at which unsecured creditor Houston Tire appeared but raised no objection. The Court ordered the balance of the settlement proceeds transferred to the chapter 13 Trustee after payments of certain legal fees and expenses, and $20,000.00 to Debtors (docket no. 178, "Order Awarding Fees, In Quantum Meruit"). The settlement proceeds are more than enough for Debtors to pay the remaining amounts due under the confirmed plan. On November 24, 2009, the Trustee received $467,387.78 in settlement proceeds, but did not apply the funds towards the remaining amounts due under the plan.

## The Motion to Disburse

On December 23, 2009, Debtors filed their Motion to Disburse, seeking an order directing the Trustee to pay to creditors the remaining amounts due under the plan, and to pay to Debtors a refund of $396,114.91. $396,114.91 is the balance that would remain if the Trustee made all payments due under the confirmed plan. Accordingly, Debtors allege that they have overpaid that amount under the confirmed plan.

1. **Objections**

The chapter 13 trustee and unsecured creditors Houston Tire and XL Parts objected to the Motion to Disburse (docket nos. 226, 229, 233). Specifically:

- Houston Tire points out that the confirmed plan does not provide for any payment of allowed unsecured claims. Because Debtors now have the ability to pay all allowed unsecured claims in full from the settlement proceeds, Debtors should be required to

- do so. To this end, Houston Tire contemporaneously filed a Motion to Modify the chapter 13 plan (docket no. 227).

- XL Parts argues that under principles of good faith, Debtors should not receive a refund when unsecured creditors are paid nothing. XL Parts supports amendment of the chapter 13 plan, if amendment is required to pay unsecured creditors in full.

- The chapter 13 Trustee asserts that in order for Debtors to be eligible to receive a discharge, Debtors must complete the applicable commitment period under 11 U.S.C. § 1325(b)(4)(B). Pursuant to § 1325(b)(4)(B), Debtors must pay all allowed unsecured claims in full if they pre-pay their five-year plan.

**2. Oral Arguments**

On January 20, 2010, the Court heard oral arguments on the Motion to Disburse. With respect to the Trustee's objection, the Court finds that § 1325(b)(4)(B) does not control. Section 1325(b)(4)(B) sets forth one of the requirements for plan confirmation. Pursuant to § 1325(b)(4)(B), a debtor must provide for a five-year commitment period for the plan if (i) the chapter 13 trustee or an unsecured creditor objects; and (ii) the debtor has income above the median income for the State. Since no party objected, Debtors were not required to propose a five-year plan.

It is true that Debtors *did* propose a 60-month plan, which provided that the total of the payments required of Debtors was $123,000.00.

As set forth above, the plan was confirmed—without objection–on November 14, 2007. There is no showing that Debtors engaged in fraudulent or wrongful conduct in obtaining plan confirmation. It is far too late for parties to object to a plan that was confirmed over two years ago. Debtors proposed $123,000.00 in payments and they have now made more than $123,000.00 in payments.

Nothing in the Bankruptcy Code mandates that a debtor must amend a plan based on a change of circumstances. Instead, the Bankruptcy Code allows the chapter 13 trustee or a holder of an allowed unsecured claim to propose a modification. 11 U.S.C. § 1329.

Section 1329 allows plan modification "at any time after confirmation of the plan but before completion of payments under such plan . . . upon request of the debtor, the trustee, or the holder of an allowed unsecured claim . . . ." 11 U.S.C. § 1329(a).

At the time Houston Tire filed its Motion to Modify, the Trustee had long received the settlement proceeds. Based on this fact, Debtors argue that Houston Tire's Motion to Modify was untimely because plan payments were completed. As set forth above, a motion to modify must be filed "before completion of payments under such plan . . . ." 11 U.S.C. § 1329(a). Therefore, Debtors argue that Houston Tire and XL Parts' objections should be overruled.

Houston Tire countered with two arguments. First, they argue that completion of payments occurs only after a trustee completes payments to creditors. If that argument is sustained, then Houston Tire's Motion to Modify was timely filed. Second, and in the alternative, if the Court finds that completion of payments occurs after a debtor completes payments to the trustee, the Court should still find in favor of Houston Tire due to the facts of the case.

Essentially, Houston Tire argues that it was precluded from filing any timely motion to modify due to the sequence in which Debtors acted. About one week before the Debtors filed their Application to Compromise Controversy on October 18, 2009, Debtors launched a series of objections to claims, including one against Houston Tire's unsecured claim for $87,650.10 (docket no. 149). Pursuant to § 1329, only the holder of an *allowed* unsecured claim may file a motion to modify a confirmed plan. 11 U.S.C. § 1329(a). Because Debtors objected to the

allowance of Houston Tire's claim, it was not an allowed claim. 11 U.S.C. § 502(a). As a result of Debtors' pending objection to Houston Tire's claim, Houston Tire no longer held an allowed unsecured claim and lost standing to file a motion to modify pursuant to § 1329(a).

It was not until November 30, 2009 that Debtors and Houston Tire resolved their claim dispute. However, by this time, the Court had already approved the Application to Compromise and the settlement proceeds had been transferred to the Trustee. Accordingly, from the time the Application to Compromise Controversy was filed to its approval by the Court, Houston Tire did not have the opportunity to file a motion to modify. Houston Tire's argument is that Debtors acted in bad faith and should be prohibited from benefiting from a "windfall."

### 3. Post-Hearing Events

Based on Houston Tire's argument, the Court ordered the parties to submit briefs on how "completion of payments" is defined § 1329 and on the equitable issues raised by Houston Tire.[1] All parties complied.

The Court also instructed the parties to submit an agreed order on an amount that would be sufficient to pay all allowed claims fully in the case. Pending resolution of the Motion to Disburse, the Debtors could receive from the Trustee the settlement proceeds over and above that amount that are not in dispute. On February 18, 2010, the parties submitted an agreed order (docket no. 247), which the Court approved (docket no. 249).[2] The agreed order provides that the Trustee retain $205,000.00 as a sufficient amount to pay all remaining allowed claims in full, and disburse the remaining amount to Debtors (docket no. 249).

---

[1] XL Parts appeared near the end of the hearing on January 20, 2010, and announced that it joined in Houston Tire's Motion to Modify.

[2] The parties initially could not come to an agreement regarding an amount that would be sufficient to pay all remaining allowed claims in full, such that Debtors filed a Motion to Determine Funds for Payment of Claims and for Disbursement (docket no. 240). However, the parties ultimately reached an agreement, and filed the above-referenced agreed order (docket no. 247).

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157.

## Analysis

**1. "Completion of payments" under 11 U.S.C. § 1329**

Section 1329 provides that:

> At any time after confirmation of the plan but before *completion of payments* under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim . . . .

11 U.S.C. § 1329(a) (emphasis added). "Modification is based on the premise, that during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." *In re Meza*, 467 F.3d 874, 877 (5th Cir. 2006) (citing *In re Taylor*, 215 B.R. 882, 883 (Bankr. S.D. Cal. 1997)). Though some courts require "an unanticipated, substantial change to occur before permitting such a plan modification," the Fifth Circuit does not require the showing because § 1329's plain language does not impose that requirement. *Id.*

*Meza* is a leading case in the Fifth Circuit addressing § 1329. *Meza*, 467 F.3d at 874. In *Meza*, a motion to modify was filed by the trustee to include the non-exempt portion of debtors' 2003 federal income tax refund under the plan. *Id.* at 876. While the motion was pending, debtors paid the full balance of the plan. *Id.* Therefore, by the time the motion was presented to the bankruptcy court, debtors had paid all payments required under the plan to the trustee. *Id.* The bankruptcy court ruled, which the district court affirmed, that the modification request was untimely according to the plain language of § 1329 because all plan payments had been made. *Id.*

On appeal, the Fifth Circuit vacated the ruling, holding that the trustee's motion was timely because it was filed before debtors' payments to the trustee.

> [I]f the trustee files a modification motion and the debtor *then* attempts to complete plan payments, the debtor appears to unfairly attempt to circumvent § 1329(b)(2)'s plain language that a "plan as modified becomes the plan *unless*, after notice and hearing, such modification is disapproved."
>
> . . . .
>           . . . Obviously Debtors' making their final payment did not *nunc pro tunc* make untimely that modification filing. Because the modification was timely, and would become effective after the notice period *unless* disapproved, it precluded Debtors from making their final payment under the earlier confirmed plan.

*Meza*, 467 F.3d at 878-79 (internal citations omitted) (emphases original).

In deciding *Meza*, the Fifth Circuit only held that a motion to modify is not barred if it is filed before a debtor completes payments to the trustee. *Id.* at 878. It did not examine whether a motion to modify would be barred if it is filed after a debtor completes payments to the trustee but before the trustee completes payments to creditors. *See Id.*

However, in dicta, the Fifth Circuit provided guidance for the resolution of the "completion of payments" question in this case:

> [I]t is largely undisputed "that a plan cannot be modified once all payments have been made." "[I]f a trustee could amend a Chapter 13 plan *after* the debtor completes his or her payments to the trustee, the mandatory nature of the discharge provision [11 U.S.C. § 1328] would be eviscerated." Accordingly, if a debtor pays his plan balance and the trustee then seeks to modify the plan under § 1329 to account for newly-acquired fund, modification is *not* permitted . . .

*Id.* (emphases original). The same principle barring the trustee's motion for modification—protecting the "mandatory nature of the discharge provision"—should also apply to unsecured creditors. Although the trustee does not represent the interests of unsecured creditors per se, unsecured creditors are the principal beneficiaries of at trustee's motion to modify a plan to increase plan payments. Thus, if the unsecured creditors cannot benefit indirectly from a trustee's motion to modify after the trustee has received all payments, the Court sees no reason

why an unsecured creditor could directly move to increase payments after the trustee has received all payments. Such a motion would eviscerate the mandatory nature of the discharge provision. Therefore, the Court finds that completion of payments occurs when a debtor completes payments to the trustee.

Houston Tire argues that the Court should find that completion of payments occur when a trustee completes payments to creditors based on a comparison of § 1329 to § 1328. Specifically, § 1328 provides that "after completion *by the debtor* of all payments under the plan," the court shall grant the debtor a discharge. 11 U.S.C. § 1328(a) (emphasis added). Section 1329(a) only provides that a plan may be modified "before completion of payments under the plan," with no language regarding by whom payments are completed. *Id.* § 1328(a). Houston Tire bases its argument on the general principle that Congress acts intentionally when it includes or omits particular phrases in statutes.

Though the Court finds Houston Tire's argument noteworthy, the Court finds otherwise for a host of reasons. First, as discussed above, the Fifth Circuit deemed that completion of payments occurs when a debtor completes payments to the trustee based on its analysis, express statements, and case references in *Meza*. *Meza*, 467 F.3d at 878.

Second, while there is some disagreement, "it has generally been held that a plan is 'complete' when the debtor makes all the payments to the trustee." *In re Sounakhene*, 249 B.R. 801, 804 (Bankr. S.D. Cal. 2000). *See also In re Phelps*, 149 B.R. 534, 538 (Bankr. N.D. Ill. 1993); *In re Moss*, 91 B.R. 563, 565 (Bankr. C.D. Cal. 1988). *Phelps* notably explained that:

> Ordinarily, the court would employ [Houston Tire's advocated] approach in interpreting § 1329. Such an approach would lead to the conclusion that § 1329 allows modification of a debtor's plan at any point before the trustee has forwarded all payments to the appropriate creditors. That is true because Congress specifically provided in § 1328(a) that discharge of the debtor is appropriate "as soon as practicable after completion by the *debtor* of all payments

under the plan." However, in § 1329, the very next section, Congress provided that modification of a [c]hapter 13 plan is permissible at any time before "completion of payments under the plan." The difference between the language of § 1328(a) and § 1329(a) would lead the court to conclude that the fact that Congress failed to insert the words "by the debtor" in § 1329 is dispositive, because, if Congress had wanted to prevent modification after a debtor had made all payments to the trustee, it would have used the phrase "completion by the debtor of all payments under the plan" in § 1329(a), exactly as it had done in § 1328.

Despite the logical inherent in such an approach, the court cannot conclude that Congress intended the phrase "completion of payments" in § 1329(a) to refer to the completion of payments by the trustee to creditors in addition to the completion of payments by the debtor to the trustee, because to so interpret § 1329(a) could lead to an absurd result when § 1329(a) is read in conjunction with § 1328(a). Section 1328(a) provides that a [c]hapter 13 debtor is given a discharge "as soon as practicable upon completion of payments by the debtor under the plan." If "completion of payments" in § 1329 means both completion of payments by the debtor to the trustee and by the trustee to creditors under the plan, the trustee would have the right to seek to amend the plan to increase the amount the debtor's unsecured creditors with allowed claims would receive *after the debtor had received a discharge*. Thus, in theory, the debtor could be compelled to pay discharged debts under a modified plan. Congress could never have intended such an absurd result.

*Phelps*, 149 B.R. at 538-39 (internal citations omitted) (emphases original).

Accordingly, because Debtors' settlement proceeds were transferred to the Trustee before Houston Tire filed its Motion to Modify, and the proceeds were sufficient to complete payments under the confirmed plan, the Court finds that Houston Tire's Motion to Modify is barred.

**2. Equitable Considerations**

Under 11 U.S.C. § 105(a), the Court:

[M]ay issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action . . . to prevent an abuse of process.

11 U.S.C. § 105(a). Section 105 is "'consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor

relationships.'" *Davis v. Davis* (*In re Davis*), 170 F.3d 475, 492 (5th Cir. 1999) (citing *United States v. Energy Resources, Inc.*, 495 U.S. 545, 549, 110 S. Ct. 2139, 109 L. Ed. 2d 580 (1990)). Section 105(a) is:

> "[A]n omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of § 105 is to assure the bankruptcy courts['] power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." The second sentence of § 105(a) was expressly intended to broaden the authority of the bankruptcy courts to act, sua sponte, to promote the Code's provisions."

*Id.* (internal citations omitted).

Houston Tire asserts that the Court should prevent an abuse of process by Debtors based on the facts of this case. At first blush, Houston Tire's argument is quite compelling because it appears that Houston Tire was precluded from filing a motion to modify on account of Debtors' objection to its unsecured claim during the time in which the Application to Compromise Controversy was pending. Under § 502, a claim is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a). Under § 1329, a plan may be modified by the debtor, the trustee, or the holder of an allowed secured claim. 11 U.S.C. § 1329. Houston Tire was a holder of an allowed secured claim until Debtors objected. As a result, Houston Tire could not file a motion to modify until Debtors' objection was resolved.

Houston Tire also alleges that Debtors waited more than two years to launch a total of 19 objections to claims, including the one held by Houston Tire, so that they could eliminate standing by any of the unsecured creditors to file a motion to modify while the Court considered their Application to Compromise Controversy. Debtors' alleged strategy was to obtain an approval of their settlement and have the settlement proceeds pre-pay the confirmed plan before a motion to modify could be filed. Debtors' alleged objectives were to secure a "windfall"

payment from their settlement agreement and to avoid paying unsecured creditors anything. In short, Houston Tire argues that Debtors' actions were taken in bad faith.[3]

### a. Good Faith and Bad Faith

With respect to whether Debtors acted in bad faith, the Court finds it is useful to look at how the Fifth Circuit determines whether a debtor has acted in good faith or bad faith.

With respect to good faith, a totality of the circumstances test is used to determine whether a chapter 13 plan has been proposed in good faith, as required by 11 U.S.C. § 1325(a)(3). *Suggs v. Stanley* (*In re Stanley*), 224 Fed. Appx. 343, 346 (5th Cir. 2007). Good faith factors include: (1) the reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a creditor has objected to the plan. *Id.* "In applying this test, the bankruptcy court 'exacts an examination of all of the facts in order to determine the bona fides of the debtor.'" *Id.* (citing *In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir. 1987)).

---

[3] The Court does not extend Houston Tire's equitable arguments to apply to XL Parts because XL Parts' procedural position is entirely different in this case. Debtors orally withdrew their objection to XL Parts' unsecured claim on November 10, 2009, the same day on which the Court approved the Application to Compromise Controversy. The Trustee did not receive the settlement proceeds until November 24, 2009. Therefore, XL Parts had 14 days to file a motion to modify as an unsecured creditor with an allowed claim. Therefore, XL Parts was not "precluded" from requesting a plan modification before the settlement proceeds were paid to the Trustee.

With respect to bad faith, the Fifth Circuit has held that in the context of requesting leave to amend exemptions pursuant to Federal Rule of Bankruptcy Procedure 1009:

> A finding of bad faith requires some form of deception, such as an effort to mislead creditors or to conceal assets, as opposed to a mere mistaken failure to list an asset or to claim an exemption.
>
> . . . Bad faith may also be shown by a gross and deliberate understatement of the value of an asset, made in an attempt to deceive creditors or the bankruptcy court.

*In re Unruh*, 265 Fed. Appx. 148, 150 (5th Cir. 2008).

### b. The Facts of the Case

In light of these guidelines, the Court reviews the entire history of the case to examine whether Debtors acted in bad faith. The facts are as follows:

- On August 3, 2007, at the beginning of the case, Houston Tire filed a notice of appearance and request for notice which enabled it to receive all subsequent notices in the case (docket no. 10).

- Houston Tire received a copy of Debtors' schedules on which the malpractice cause of action was disclosed with an unknown value (docket no. 15).

- On August 30, 2007, Houston Tire filed its proof of claim for an unsecured amount of $87,650.10.

- Three creditors objected to the Debtors' originally proposed plan. Houston Tire did not.

- Debtors' proposed amended plan, which provided for 0% recovery on allowed unsecured claims, was confirmed on November, 14 2007. Houston Tire did not object to the plan nor did it appear at the confirmation hearing.

- On August 10, 2009, a motion to dismiss was filed by the Trustee for delinquent payments (docket no. 136). At the hearing held on September 9, 2009, Debtors disclosed that their medical malpractice cause of action had been settled, and that they would file claim objections and a motion to approve compromise. Houston Tire did not appear at this hearing, but it had notice of it.

- On October 10, 2009, Debtors filed their objection to Houston Tire's claim (docket no. 149).

- October 18, 2009, the Application to Compromise Controversy was filed (docket no. 162).

- On October 29, 2009, Houston Tire responded to Debtors' claim objection (docket no. 172). Houston Tire's response specifically stated that in light of Debtors' $750,000.00 settlement agreement, it reserved its right to amend its proof of claim to include unpaid insurance amounts, late charges, and pre-petition interest on unpaid rent, and its right to assert an administrative expense claim for any unpaid post-petition rent that Debtors failed to pay. It did not make any statements with respect to modification of the plan.

- Houston Tire did not respond to the Application to Compromise.

- On November 10, 2009, the Court held hearings on the Application to Compromise Controversy as well as on Debtors' objection to Houston Tire's claim. Houston Tire appeared at the hearing, but it did not object to the Court's approval of the Application to Compromise or otherwise request that its interests be protected while Debtors' objection to its unsecured claim was resolved. Particularly remarkable at this hearing was the Court's explicit discussion with Debtors' counsel regarding the possibility of modification in light of the settlement proceeds, and how excess funds above Debtors' obligations under the confirmed plan should be treated. The end result was that language which would have expressly stated that excess funds be paid to creditors and would have constituted paragraph 6 in the Order Awarding Fees, In Quantum Meruit (docket no. 178) was removed. The Court continued the hearing on Debtors' objection to Houston Tire's claim to November 30, 2009 in light of the parties' prospective settlement agreement.

- On November 24, 2009, the Trustee received the settlement proceeds.

- On November 30, 2009, Debtors and Houston Tire announced that they reached an agreement regarding Houston Tire's unsecured claim. The Court entered an order declaring that Houston Tire has an allowed unsecured claim of $52,500.00 (docket no. 219).

While it is true that during the time in which Debtors' Application to Compromise Controversy was pending, Houston Tire did not have standing to filing a motion to modify as a result of Debtors' objection to its claim, it is also true that Houston Tire had notice of the $750,000.00 settlement agreement. It was not only foreseeable that the settlement proceeds would be received by the Trustee to pay remaining amounts due under the confirmed plan, but

Houston Tire had actual notice of this fact when it was discussed at the November 10, 2009 hearing.

Houston Tire could have protected its interests in 2007 when the original plan was confirmed. For example, it could have demanded that the Court include a provision in the confirmation order that any proceeds from the fully-disclosed lawsuit would be paid to holders of unsecured claims. Houston Tire did not do so.

Suffice it to say that though Houston Tire could not procedurally file a motion to modify pursuant to § 1329 while its claim was in dispute, it had other opportunities to protect its interest even after the 2007 plan was confirmed. For example, Houston Tire could have responded to the Application to Compromise by filing a request for continuance until Debtors' objection to its claim was resolved. Alternatively, Houston Tire could have also requested particular language within the Court's order approving the compromise to delay transfer of the settlement proceeds to the Trustee until its claim dispute was resolved. Moreover, Houston Tire could have proposed a plan modification before the lawsuit was settled. It did not do any of those things.

The Court finds that the sequence in which Debtors filed their objections to claims and subsequently, their Application to Compromise Controversy, while intriguing, was in accordance with notice and hearing requirements under the Bankruptcy Code. There are no time limits for Debtors to file objections to claims. The fact that Debtors waited until the third year of their bankruptcy case to object to claims is not, on its face, evidence of bad faith. Rather, it may simply reflect the reality that Debtors had limited resources to contest claims until they settled their malpractice cause of action. In fact, Debtors' case was set for dismissal due to delinquent payments until they announced their settlement agreement. Therefore, even if Debtors had not "waited" to file claim objections in the case, there would very likely be no material effect on how

unsecured creditors behaved. Unsecured creditors would have no incentive to litigate Debtors' objections because under the confirmed plan, they expected to receive 0% on their claims. The incentive to litigate claims for all parties involved, on a practical basis, arose after the appearance of settlement proceeds.

The Court also notes that the objection to Houston Tire's claim was not frivolous. Houston Tire filed a claim for $87,650.10. Debtors objected and the parties settled by allowing the claim only in the amount of $52,500.00, a reduction of 40%. It is difficult to blame Debtors when Houston Tire's claim was apparently overstated.

Furthermore, neither the Trustee nor XL Parts was precluded from filing a motion to modify. If Debtors were engaging in sharp practices, their allegedly devious conduct does not seem well-conceived. Surely, Houston Tire could have encouraged the Trustee or other creditors to propose a modification.

With respect to XL Parts, Debtors settled their claim dispute with XL Parts on the day the compromise was approved. As a result, there was a period of 14 days between the time XL Parts regained its standing as a holder of an allowed unsecured claim and the time the settlement proceeds were transferred to the Trustee. XL Parts had a total of 14 days to timely file a motion to modify under § 1329, but it did not. Debtors' dealings with XL Parts highlight that Debtors did not act in bad faith.

With respect to the Trustee, there was never a time period prior to November 24, 2009 when he was precluded from filing his own proposed modification in accordance with *Meza*.

The case to which Houston Tire cites for its request for relief is *McCarthy*. *In re McCarthy*, 391 B.R. 372 (Bankr. N.D. Tex. 2008). *McCarthy* states:

> The surreptitious, unexplained and unexpected delivery to the Trustee by a debtor of sufficient funds to pay all remaining plan obligations, standing alone, might well be found by a court not to constitute completion of payments under a plan within the meaning of [§] 1328(a) (and [§] 1329(a)). Were such conduct motivated by such a debtor's desire to keep from the [t]rustee and the court an anticipated windfall or other change of circumstance, the occurrence of which could lead to the [t]rustee's or a creditor's proposal of a modification under [§] 1329, that debtor's conduct would, in fact, probably be fraudulent and his or her discharge would be subject to attack under [§] 1330.

*Id.* at 375-76. As discussed above, the facts of this case show that Debtors did not act in bad faith or were fraudulent. Accordingly, the Court declines to exercise its equitable powers under § 105.

**3. The Trustee's Administration of "Estate Assets"**

In his brief, the Trustee asserts, which XL Parts supports, that the settlement proceeds are property of the estate and should be administered for the benefit of creditors. The Trustee's position is that a plan modification is never necessary to administer any estate assets. The Trustee relies on three provisions of the confirmed plan, which is based on the official form of the Southern District of Texas, to advance his position.

First, paragraph 1, entitled "Payments," requires that "debtors . . . submit all or such portion of their future earnings or other future income to the supervision and control of the chapter 13 Trustee . . . ." Second, paragraph 10, entitled "Unsecured Claims," provides that "[u]nsecured creditors not entitled to priority shall comprise a single class of creditors, and those whose claims are allowed, shall be paid a pro rata share of the amount remaining after payment of all secured, priority, and specially classified unsecured claims." Finally, paragraph 15 states that "[t]here are no addenda or other changes made to the official form."

Construing these three provisions together, the Trustee argues that: (1) the settlement proceeds were property of the estate; (2) the payment provision in paragraph 1 contemplates the exact situation at hand, which is for future income to be submitted to the Trustee; (3) pursuant to paragraph 10, unsecured creditors are to be paid a pro rata share of the amount "remaining" after payment of the above-listed claims; and (4) because the settlement funds on hand are sufficient to pay all allowed claims in full, the "amount" remaining after payment of the above-listed claims would be more than adequate to result in 100% payment on allowed unsecured claims by the Trustee. Furthermore, it has been the Trustee's ordinary course of practice to administer such "windfalls," or to distribute such "amounts" remaining regardless of the source of payments, for the benefit of creditors, without noting whether a confirmed plan provides for such distributions.

The Court is alarmed by such a reading of the confirmed plan. Such a loose reading ignores the entirety of sentence 1 of paragraph 1, which conditions the Trustee's supervision and control of funds on what "is necessary for the execution of the plan." The terms of the plan are subsequently set forth in paragraph 1 by amount, frequency, and duration of payments as well as by the grand total of payments. Such terms are not for "mere convenience," as the Trustee states, but rather, are binding on creditors. "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). *See e.g., Meza*, 467 F.3d at 877 (holding that a confirmed chapter 13 plan is binding on all parties under 11 U.S.C. § 1327(a); however, the plan may be modified pursuant to 11 U.S.C. § 1329).

> The Trustee is bound to administer the assets in accordance with the confirmed plan:
>
> Under section 704(1) of the Bankruptcy Code, a Chapter 7 trustee may "collect and reduce to money the property of the estate for which such trustee serves . . . ." These powers are absent from Chapter 13. A Chapter 13 trustee is neither empowered nor authorized to collect or liquidate property of the estate or property of the debtor. Similarly, Chapter 13 does not contain any provision, like that in section 726(a) for Chapter 7 trustees, which either permits or directs the distribution of "property of the estate" or which specifies how "property of the estate shall be distributed . . . ." In fact, the only provision in Chapter 13 which authorizes or permits a Chapter 13 trustee to handle property of any nature is found in section 1302(b)(3), which requires the trustee to distribute the plan payments received from a debtor. Consequently, other than relaying the funds directly entrusted to the trustee by the debtor *pursuant to a confirmed plan*, a Chapter 13 trustee, unlike a Chapter 7 trustee, has no statutory obligation, right, duty or power to sell, use, lease, collect, liquidate or distribute any property, whether that property is denominated "property of the estate" or "property of the debtor."

*EconoLube N' Tune, Inc. v. Frausto* (*In re Frausto*), 259 B.R. 201, 210 (Bankr. N.D. Ala. 2000) (emphasis added). Although the Court believes that a Court order or a confirmed plan could vest additional authority in a chapter 13 trustee, no such order or provision exists in this case. The Court overrules the Trustee's arguments.

## Conclusion

Because the Court has found that Debtors have not acted in bad faith or otherwise abused the bankruptcy process, the Court grants Debtors' Motion to Disburse. Houston Tire's Motion to Modify is time-barred, and therefore, denied. A separate order will be issued.

SIGNED **March 9, 2010.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE